Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6183 | **DATE** | 10/25/2002 |
| **CASE TITLE** | PORTER vs. BANKERS LIFE, ET AL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Motion (41-1) for summary judgment is granted/denied in part. Summary judgment is entered in favor of defendant Bankers Life and against plaintiff Paul E. Porter on Counts I, II, III, IV, VI. Summary judgment is entered in favor of defendant Conseco Services and against plaintiff Paul E. Porter on all counts.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 29 2002 | 48 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | Docketing Deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | 02 OCT 28 PM 4:34 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL E. PORTER,<br><br>Plaintiffs,<br><br>v.<br><br>BANKERS LIFE & CASUALTY CO.,<br>and CONSECO SERVICES,<br>LLC,<br><br>Defendants.<br><br>BANKERS LIFE & CASUALTY CO.,<br><br>Counter-Plaintiff,<br><br>v.<br><br>PAUL E. PORTER<br><br>Counter-Defendants. | **DOCKETED**<br>OCT 2 9 2002<br><br><br>No. 01-CV-6183<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Paul Porter, a former Field Vice President for Bankers Life & Casualty Company ("Bankers"), is suing his former employer and Conseco Services, LLC ("Conseco"), an affiliate of Bankers. Porter worked as Field Vice President for Bankers' four-state southern region. Upon becoming aware of possible insurance fraud in Porter's region, Bankers and Conseco conducted respective investigations. A few months after initiating its investigation, Bankers terminated Porter. Before he left the company, however, security personnel employed by Conseco interviewed him regarding any possible involvement in the fraud. During the interview,



the security personnel were abusive, made false accusations and unwarranted insinuations, repeatedly interrupted Porter, and were otherwise oppressive in their questioning of him. Upon being terminated, Porter was replaced by Dean Aldridge. During the following months, Aldridge told various managers and agents in Porter's old region that Porter was a "crook," a "criminal," and someone who had been "caught with his hand in the cookie jar." Porter claims that Defendants had no authority to terminate his employment contract with them, that they intentionally or negligently inflicted emotional distress upon him during the course of an interview by corporate security regarding an investigation into insurance fraud in his region, and that they defamed him. Defendants have moved for summary judgment.

Summary judgment is appropriate if, after drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 320 (7th Cir. 1992). The question is thus "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Count I: Vicarious Liability

Defendants argue that this count does not state a claim upon which relief can be granted. I agree and grant summary judgment on this claim.

## Counts II, III, and IV: Contract Claims

Porter makes three claims against Defendants on the basis of his employment contract: breach of contract, wrongful discharge, and breach of implied covenant of good faith and fair dealing. Porter first alleges that Defendants entered into a contractual relationship with him and breached this contract by terminating his employment. I find that Porter was employed at will under Illinois law,[1] and Defendants did not breach the contract by exercising this power to terminate him. Regarding Porter's wrongful discharge claim, a person employed at will may be discharged "for any reason or no reason." *Zimmerman v. Buchheit of Sparta, Inc.*, 645 N.E.2d 877, 879 (Ill. 1994). Because Porter's claim does not fall within the only exception for retaliatory discharges, *see Jacobson v. Knepper & Moga, P.C.*, 706 N.E.2d 491, 492 (Ill. 1998), the claim fails as a matter of law. Finally, Porter alleges that Defendants breached their duty of good faith and fair dealing "with regard to carrying out their employment contract with him." However, "[a]n employment-at-will relationship 'gives the employer the right to terminate the employment at any time. Therefore, it is incongruous to imply a covenant [the implied covenant of good faith and fair dealing] which restricts that right.'" *LaScola v. US Sprint Communication*, 946 F.2d 559, 565 (7th Cir. 1991) (quoting *Harrison v. Sears Roebuck & Co.*, 546 N.E.2d 248, 256 (Ill. App. Ct. 1989)). Because he was employed at will, Porter cannot, as a matter of law, recover for breach of the covenant of good faith and fair dealing. Therefore, I grant summary judgment on all three contract-based claims.[2]

---

[1] Porter's contract specifies that it will be governed by Illinois law. Accordingly, Porter's contract-based claims must be decided under Illinois law.

[2] Because I grant summary judgment, it is unnecessary to address Defendants' argument that no contract claims lie against Conseco because Porter's employment contract was with

3

Count V: Intentional Infliction of Emotional Distress

Porter complains that Conseco's investigators inflicted emotional distress by (1) falsely accusing him of fraud, (2) falsely claiming that other witnesses had implicated him in a scheme to defraud the company, (3) interrupting him during their questioning, and (4) bullying and intimidating him and using an aggressive tone. To prove intentional infliction of emotional distress ("IIED") under Indiana law,[3] Porter must show that defendants (1) intentionally or recklessly (2) engaged in extreme and outrageous behavior, which caused him severe emotional distress. *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991). Extreme or outrageous conduct is conduct "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," *Conwell v. Beatty*, 667 N.E.2d 768, 777 (Ind. Ct. App. 1996), but does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," *Gable v. Curtis*, 673 N.E.2d 805, 810 (Ind. Ct. App. 1996). This court has previously noted that "whether conduct is sufficiently extreme and outrageous to support liability must be determined by all of the particular facts of the case at bar" and that "in most instances . . . comparisons to the facts of other cases will be of minimal assistance." *Dawson v. New York Life Ins. Co.*, 932 F. Supp. 1509, 1546 n. 41 (N.D. Ill. 1996).

---

Bankers.

[3] Illinois applies the "most significant relationship" test for determining what law to apply in tort cases. In practice, "'the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties.'" *Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 503-04 (7th Cir. 1998) (quoting *Esser v. McIntyre*, 661 N.E.2d 1138, 1141 (Ill. 1996). Accordingly, Indiana law applies to Porter's IIED and negligent infliction of emotional distress claims because they are based solely upon the interviews conducted by Conseco employees in Carmel, Indiana. *See Dr. Franklin Perkins School v. Freeman*, 741 F.2d 1503, 1520-21 (7th Cir. 1984).

However, the Indiana Court of Appeals has recently addressed an IIED claim with similar facts to the one at hand. *Dietz v. Finlay Fine Jewelry Corp., et al.*, 754 N.E.2d 958, 970 (Ind. Ct. App. 2001), held that an employer's hour-long interrogation of an employee suspected of theft, during which the interviewer falsely accused the plaintiff of substance abuse, shoplifting, and dishonesty, and was gruff and intimidating, was not extreme and outrageous as a matter of law. This case bears enough factual resemblance to the present one for me to conclude that Plaintiff's IIED fails as a matter of law and grant summary judgment.[4]

Count VI: Negligent Infliction of Emotion Distress

To recover for negligent infliction of emotional distress under Indiana law, Porter must show that Conseco (1) had a duty to conform its conduct to the requisite standard of care, (2) breached its duty, and (3) proximately caused Porter emotional distress. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991). In addition, Porter must show that he suffered a physical impact as a result of Conseco's alleged negligence and that the impact caused him serious emotional trauma. *Alexander v. Scheid*, 726 N.E.2d 272, 283 (Ind. 2000). Here, although a genuine issue of material fact may exist as to whether Porter suffered the required physical impact,[5] his claim

---

[4] Because I grant summary judgment, it is unnecessary to address Defendants' argument that this claims only lie against Conseco, the entity that employed the interviewers who Porter claims inflicted emotional distress by their conduct.

[5] *See Scheid*, 726 N.E.2d at 283-83 (patient's allegations that, as a result of physician's negligence in failing to follow up on chest X-ray which revealed a nodule in patient's lung, patient had suffered the destruction of healthy lung tissue by a cancerous tumor which was later diagnosed, and that as result of her bleak prognosis she was suffering from emotional trauma and was being treated with antidepressants, were sufficient to establish emotional trauma arising from direct involvement of physician, and thus to support claim for negligent infliction of emotional distress under modified impact rule).

5

fails because it is undisputed that Conseco did not breach any duty to protect Porter from reasonably foreseeable harm. *See Kottlowski v. Bridgestone/Firestone, Inc.*, 670 N.E.2d 78, 85 (Ind. Ct. App. 1998). Conseco security investigators were justified in interviewing Porter about insurance fraud in his region, and there is no evidence that they had reason to believe that doing so would create an unreasonable risk of distress to Porter. Therefore, summary judgment on this claim is granted.[6]

Count VII: Defamation

Porter claims that Defendants defamed him on multiple occasions. Defendants argue that they are entitled to summary judgment on this claim for two reasons: (1) certain allegedly slanderous statements are inadmissible as hearsay, and (2) the remaining allegedly slanderous statements, all made by Porter's replacement Dean Aldridge,[7] fail to meet the test for slander under Mississippi law. Because I find that genuine issues of material fact exist as to whether these latter statements constitute slander, it is unnecessary, for purposes of this summary judgment motion, to consider whether the former statements are inadmissible as hearsay.

---

[6] Once again, because I grant summary judgment on this claim as a matter of law, it is unnecessary to address Defendants' argument that this claim only lies against Conseco, the entity that employed the interviewers who Porter claims inflicted emotional distress by their conduct.

[7] These remaining statements are the following: (1) Aldridge telling other Bankers managers at meeting in Memphis, Tennessee in 2001 and Dallas, Texas in December 2000 that Porter was "caught with his hand in the cookie jar"; (2) Aldridge telling Doc Lovett that "Conseco would not have done what they did had Ed Porter not been a criminal"; and (3) Aldridge telling Bankers managers Mickey Brown, Randall Ayers, and Doc Lovett (all of whom were in Louisiana at the time) that they should not associate with Ed Porter and that they should not associate with criminals.

To recover for defamation under Mississippi law,[8] Porter must prove (1) a false and defamatory statement about him, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Speed v. Scott*, 787 So.2d 626, 631 (Miss. 2001), citing *Franklin v. Thompson*, 722 So.2d 688, 692 (Miss. 1998). Defendants first argue that Aldridge's comments about Porter to other Bankers managers do not constitute publication to a third party because they were subject to a conditional or qualified privilege. Under Mississippi law, "[a] communication made in good faith and on a subject-matter in which the person making it has an interest, or in reference to which he has a duty, is privileged if made to a person or persons having a corresponding interest or duty, even though it contains matter which without this privilege would be slanderous, provided the statement is made *without malice and in good faith*." *Louisiana Oil Corp. v. Renno*, 157 So. 705, 708 (Miss. 1934) (emphasis added).[9] Here, Aldridge's statements were made to other Bankers managers who share a common interest with him in Bankers, and thus the

---

[8] "[I]n multistate defamation cases, Illinois cases indicate that 'the applicable law is that of the victim's domicile, period.'" *Cook v. Winfrey*, 141 F.3d 322, 329 (7th Cir. 1998) (quoting *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 916 (7th Cir. 1994)). Because Mississippi is Porter's domicile, Mississippi law applies.

[9] Defendants call attention to a potentially difficult choice of law question regarding which state law should govern the existence of a qualified privilege. As in *International Administrators, Inc. v. Life Ins. Co. of North America*, 753 F.2d 1373, 1376 (7th Cir. 1985), in which the Seventh Circuit addressed an equally difficult choice of law question, it is immaterial which state's law is applied because the possible contenders do not significantly differ from one another in their recognition or treatment of the doctrine of conditional privilege, and thus application of one state's law as opposed to another's "would not change the outcome" of my decision. Furthermore, this Court is applying Mississippi law to Plaintiff's overall slander claim and I see no reason to change horses at this point, particularly in light of Plaintiff's apparent acquiescence to the use of Mississippi law.

7

qualified privilege applies to Defendants. This does not end the inquiry, however, as Porter is then required to prove "actual malice" on behalf of Aldridge as to the statements in question. *Smith v. White*, 799 So.2d 83, 86-87 (Miss. 2001). Here, there is a genuine issue as to whether Aldridge made his statements in good faith. Evidence exists that Aldridge made statements indicating he was unsure whether Porter was "guilty" or not, raising the question as to whether Aldridge really believed Porter to be a "crook" or a "criminal" or that he had been caught "with his hand in the cookie jar." Defendants are thus not entitled to summary judgment on the basis of a qualified privilege.

Defendants alternatively argue that Aldridge's statements are intra-corporate communications that have not been published to a third party. As a general rule, "an intra-corporate communication among officers or agents of the same corporation, *in connection with their duties for the corporation*, are a communication of the corporation and cannot be considered as being a communication to a third party." *Brunet v. Fullmer*, 777 So.2d 1240, 1242 (La. Ct. App. 2001) (emphasis added); *see also Bernard v. Sumner Regional Health Systems, Inc.*, No. M2000-01478-COA-RS-CV, 2002 WL 459006, at *4 (Tenn. Ct. App. Mar. 26, 2002).[10] Here, although the statements were among officers of Bankers, there is evidence that Aldridge made some of the statements while socializing with sales subordinates over dinners and drinks and arguably not within the scope of his duties for Bankers. Although many statements attributed to Aldridge may qualify as intra-corporate communications, a genuine issue of material

---

[10] Although Defendants have not cited any Mississippi law for this proposition, Plaintiffs have reciprocally cited no Mississippi law or law from any other state to refute the rule of law generally enunciated in *Brunet* and *Bernard*. Therefore, I hold the "intra-corporate communication" rule applicable.

fact exists as to whether at least a few do not. Therefore, summary judgment on this basis is also inappropriate.

Finally, Defendants argue that they are entitled to summary judgment because Porter has failed to prove slander *per se* or alternatively prove special damages. To recover for slander, Porter must prove special damages, unless Aldridge's statements constitute slander *per se*. The five categories for slander *per se* are: "'(1) Words imputing the guilt or commission or some criminal offense involving moral turpitude and infamous punishment; (2) Words imputing the existence of some contagious disease; (3) Words imputing unfitness in an officer who holds an office of profit or emolument, either in respect of morals or inability to discharge the duties thereof; (4) Words imputing a want of integrity or capacity, whether mental or pecuniary, in the conduct of a profession, trade or business;' [and (5)] words imputing to a female a want of chastity." *Speed*, 787 So.2d at 632. In order for a statement to be slander *per se* as imputing to the plaintiff the commission of a crime involving moral turpitude and infamous punishment, the charge of criminal conduct must be significant, either "(a) punishable by imprisonment in a state or federal institution, or (b) regarded by public opinion as involving moral turpitude." *Id.* at 633 (calling plaintiff a "thief" for stealing two pieces of paper was not actionable *per se*); *see also Boler v. Mosby*, 352 So.2d 1320, 1323 (Miss. 1977) (falsely accusing customer of shoplifting meat from the defendant's store was actionable *per se*); *Valley Dry Goods Co. v. Buford*, 75 So. 252, 254 (Miss. 1917) (falsely accusing employee of stealing $100 from employer's cash register, in conspiracy with someone else was actionable *per se*).

Porter asserts that being called a "crook" or a "criminal" or saying that he was "caught with his hands in the cookie jar" constitutes slander *per se* by imputing to him involvement in the

9

insurance fraud under investigation in his region. Defendants argue that Aldridge's statements refer not to particular conduct punishable by law, but instead to his "view that Porter was a poor manager and should have (or did) know about the insurance fraud taking place in his region." I can think of many words one may use to describe a poor manager, but "crook" or "criminal" are not among them. Furthermore, evidence exists that Aldridge discussed Conseco's ongoing investigation of insurance fraud and Porter's possible involvement with some of the same Bankers managers to whom he made the statements at issue, indicating that the statements he made may have imputed that Porter was somehow involved. A genuine issue of material fact therefore exists as to whether Aldridge's statements imputed to Porter the commission of a crime and/or a lack of business integrity, and thus constituted slander per se. Summary judgment on this basis is also inappropriate.

For the foregoing reasons, summary judgment for Bankers on this claim is denied. However, summary judgment for Conseco on this claim is granted because Porter has come forward with no evidence that anyone employed by that company made a false statement about him. Each of the statements that Conseco corporate security investigators told Donna Childers is not slanderous as a matter of law because no statement is false.

Summary judgment for Bankers is GRANTED as to Counts I, II, III, IV, V, VI, but DENIED as to Count VII. Summary judgment for Conseco as to all Counts is GRANTED.

ENTER:

James B. Zagel
United States District Judge

DATE: 25 Oct 2002

10